07-12-30 Ad Hoc Shrimp Trade Action Committee v. United States Mr. Ward May it please the Court, for the record, my name is Bradford Ward with Dewey & LaBeouf LLP, counsel to the Ad Hoc Shrimp Trade Action Committee. The immediate purpose of this appeal before this Court is to obtain a determination that the CIT has jurisdiction to rule on the substantive case regarding the Department of Commerce amended final determinations. While the ultimate goal of our CIT litigation is amendment of the anti-dumping orders, we are not requesting that this Court rule on the substance of our disagreement with Commerce determinations, nor are we seeking a ruling here to change the anti-dumping duty orders. We recognize that obtaining the ultimate goal involves a multi-step process under the statute, but we must begin with a resolution to the CIT jurisdiction in this case. The CIT decision was wrong in at least two critical points. First, and most fundamentally, the CIT decision was wrong to find that appeal of the Commerce determinations required concurrent appeal of the ITC determination. There are at least four reasons why this was an error. First, the statutory language of the specific provision does not require it. Second, the overall structure of the statute regarding other reviewable determinations likewise does not suggest the concept of concurrent appeal. Third, there are no case precedent, other than the CIT decision in this matter, that have held that concurrent appeals are required. And lastly, the final determination in this case is not appealable because there is no case for controversy with respect to any aspect of that determination. Very briefly with respect to each of these points, the plain reading of the statutory provision here does not require concurrent appeal of the ITC determination. 19 U.S.C. 1516a, Parente A. 2b, Clause 2, permits judicial review of a final negative determination by Commerce or the ITC, including a part of a final affirmative determination that excludes a product. On its face, it does not require a party to challenge concurrently the ITC determination. There are other, the second element here, there are other analogous Commerce Department determinations that are reviewable under the statute, but those likewise do not require concurrent appeal of the ITC determination. Clause 4 and Clause 6, for example, could result in a very substantial change to the Department of Commerce determination, which then could implicate a change in the ITC determination. But again, there is no reference to a concurrent appeal. The primary case cited by the CIT decision on this point, the Borland case, is factually distinguishable from this case and does not hold that concurrent appeal is required. Would the CIT have jurisdiction to tell Commerce to include certain elements in its determination? It does. Under the statutory authority? It does, Your Honor. Where is it? The determination that was appealed, the determinations, plural, that were appealed, excluded a product. The, it's two, I believe, or I'll get back to it. The dusted shrimp. The dusted shrimp. But under the statute, if the decision is not otherwise, there's no substantial evidence or otherwise not consistent with law, then the court can require Commerce to reconsider it, and if it still doesn't, the determination is still not consistent with law, it can require that that product be put back into. Can it order the Commerce Department to include that in the order? It can, in the first instance, it can order it to include it in the final determinations. Now, in this case, we believe that the ITC necessarily included the dusted shrimp in its analysis because its data, the data on dusted shrimp could not be separate. So the data was already in there. So if there was injury, it was also caused by the dusted shrimp to the extent it was in there. If, however, the court deemed that it was necessary to actually send, that it couldn't presume that that was all of the case, then by operation of law, the statute, after an how much consideration, what length of time, what specific procedures, it may have some discretion. But the statute, I believe, is very clear that after a determination by Commerce, the ITC must, in fact, take it up again. But the process would be from the CIT, from the Court of International Trade, back to Commerce to make a redetermination? That would be the initial step. Would they instruct them to include all of the products, including dusted shrimp? They would, our goal and their authority would be to include dusted shrimp in the final determinations, in another amended set of final determinations. Which then subsequently would go to the ITC determination and then probably back to the CIT. Conceivably, it could go back to the CIT, yes. The final reason that the error here, the first error, is that there was no legal obligation, there was no legal authority to provide the relief that we sought from the ITC. In other words, we're seeking, in the first instance, to have the Department of Commerce put back in something that they improperly excluded from the scope of the determinations. I couldn't tell. The ITC has no authority. How did it become excluded? The total monetary values include dusted shrimp, don't they? It was excluded from the Department of Commerce final determinations. At the ITC, when they're examining whether there's injury, that data could not be separately identified and excluded. So what Commerce said is that if we issue an order, because this is prior to an order, if we issue an order, there will be no duties on dusted shrimp. We have removed it from the case. That then went to the ITC, and the ITC said, the data is there. We can't exclude it, so we're going to make a determination. We find injury. And then when the order is issued by Commerce, they said, we have a determination. We have excluded dusted shrimp. We have a final injury determination, but dusted shrimp shall not have any duties placed on it. What is the percentage of the overall importation, roughly, that involves dusted shrimp? There is no specific information on separate volumes of dusted shrimp imported. There is no record evidence of the specific amounts. So how could the ITC make a determination of injury at that point? The ITC had all of the shrimp under scope, and they had all of the basic information, the import data, some measure. The dusted shrimp is not separately identified in the import data, and so they had some portion of dusted shrimp within their aggregate information, but no ability to identify it and take it out of their analysis. So whatever quantum of dusted shrimp is in there was considered in the overall assessment of injury. So when they determined that there was injury, there would be no change from the numerical standpoint if they now had a determination from Commerce that included dusted shrimp. Would Commerce need to separate that out on its own? Would data be available for that? I don't believe, because Commerce didn't make any separate calculations, I don't believe that there's any data on which Commerce can separate those dusted out. But that's what you're asking for, isn't it? No, Your Honor. We're asking that the court be empowered or instructed that it does in fact have jurisdiction to consider the substantive case regarding Commerce, and our case there about whether they improperly excluded the product by name, not by taking specific transactions or information out, but rather they determined that a product as defined was simply not subject, was not going to be subject to the duties. So there's nothing that has to be added back in at Commerce side from a numerical standpoint. It's simply a legal decision. Was this product part of the group or was it not? And they improperly excluded it in our view. And we're simply here asking that the CIT be instructed that in fact they do have jurisdiction in this case to address our substantive disagreement with Commerce. But wouldn't they have to, because presumably because of the additional processing steps, there would be a different price relationship. There might not be a less than fair value conclusion as to this particular group of imports. And so it would have to be separated out and analyzed separately, wouldn't it? In investigations, there are frequently hundreds or thousands of various products, and not all of those products are individually calculated as having margins. So there's a general determination of the scope that is subject to duty. Commerce selects respondents, not all of the imports, not all of the importers. And based on that subset of importers and imports, it examines the dumping margins. So it is not the case. Well, that's just a matter of sampling, but your point, I had thought, was that they hadn't and needn't do anything as far as Dustin Trimpe is concerned other than say that whatever the duty is, it will be imposed on Dustin Trimpe as well. That's correct. They made a decision, a legal decision, that this product, defined in a certain way, was different and therefore not subject to the order, not part of the group that it should not be subject to the duties. Our substantive case, were we to get back to the CIT and back to Commerce, is that in fact that decision was wrong. Whether or not they have the ability to calculate additional margins, my recollection, my understanding of the record is that, in fact, there's no separate data for Commerce to calculate margins with respect to Dustin Trimpe. But it's the legal question about whether they were incorrect in excluding that product in the first instance. Isn't that rather ephemeral, though? Are we trying to figure out what something is there but it's not there? I don't quite understand that. Petitions bring a general category of product and ask for duties to be imposed. I understand that. And what Commerce did was decide that a very narrow class, a narrow group as they defined it, was somehow so substantially different from the remainder of that group that it should not be within the scope. We've challenged that. There are a lot of substantive reasons why that product is very similar to other products in this continuum. Well, would they have information regarding that product and margins on that product? Again, I don't believe that they have specific information on margins on that product. But that is they do not have a requirement to include margin analysis for every subsidiary kind of product within the scope of an investigation. There's a very specific analysis. Products in shrimp, for example, are identified by size. And there's a wide range of sizes. They also can be peeled. They can be without tail. They can have spices and the like. Each one of those subcategories is a specific product that gets matched for comparison. But it's not the case that in every analysis there is a separate margin calculation for every product that is subject eventually to duties. Okay. We'd better hear from the other side, Mr. Ward. May it please the Court. We agree with much of what the appellant says. The relevant statute states that any part of the final affirmative determination which specifically excludes any company or product is reviewable. In our red brief at page 3, we give a six-step process that basically simplifies the process from petition to the issuance of a dumping order. And this might help illustrate why the trial court possesses jurisdiction over the challenge to the final determination. If you agreed, you could have saved all of this. Well, we did agree before the trial court. We expressed the exact same position as the appellants noted in their brief, citing from oral argument. The trial court, sui sponte of oral argument, raised this jurisdictional issue, and we disagreed. We agreed with the trial court that the trial court lacked jurisdiction to amend the dumping orders, which at page 3 of our brief would be step 6. But the court possessed authority to address the final determination, which is step 4 of the process at page 3 of our brief. The trial court disagreed and dismissed the matter for lack of jurisdiction. We can't confess error because we're maintaining the same position below, and we prevailed, so we couldn't appeal. However... Are you confessing error now? We are. We continue to maintain. We're not confessing error. We're continuing to maintain the same position we maintained below. Although it's certainly not helpful to our current case, we're fully prepared to go back to the trial court and adjudicate the merits of the scope determination, which was issued after numerous rounds of questionnaires and comment from the parties, and after a tremendous amount of notice and comment, the Department of Commerce determined to exclude a specifically defined product from the scope of its investigation. This is a rather unusual case, isn't it, where the government agrees that there's jurisdiction, but the lower court says, I don't have jurisdiction? Yes, it is a rather unusual case. However, the statute says what it says, and under the trial court's reading of its jurisdictional statute, there could really never be a challenge to a final determination that excludes a product. And the statute says what it says, and we certainly believe that the anti-dumping law should be administered in accordance with the statute. The statute is pretty clear as to the right of review that the party has in the CIT. Yes, we believe it's very clear. Well, how then, if I can divert you with a question that's been bothering me all along, how did this particular importation, this particular treatment, get to be excluded in the first place? Well, the Department of Commerce sought comments from the parties concerning what the scope of the anti-dumping duty order should be, as the agency normally does in dumping proceedings. And some importers and foreign producers noted that dusted shrimp was very similar to, as a precursor to breaded shrimp. Dusted shrimp and battered shrimp were a couple of products. And Commerce then sought comments from the various parties concerning these products. And a number of importers and foreign producers commented. The plaintiffs filed comments in opposition. The Department of Commerce weighed the record evidence, as it always does, and it reached a determination to exclude dusted shrimp ultimately from the scope of the investigation once the agency had what it believed was a workable definition of this product. That determination is what the plaintiffs were challenged before the Court of International Trade, which falls specifically within the trial court's statutory granted jurisdiction. Because it's at a premium price? It can't be that such a step is taken irrationally, without reason. There must have been something that persuaded Commerce to think that this product should be excluded. Yes, it was as a precursor to breaded shrimp, I believe, which is a product that the petitioners did not want within the scope of the anti-dumping duty order. There are a number of products that the petitioners asked to have placed within the order, and then there are products that the petitioners did not want within the order. And that's because companies who seek the protection of the anti-dumping duty law don't always want every product that they sell covered, because some companies produce domestically and import, and in the international trade realm, parties narrowly target the products that they wish to have covered. I'm not privy to all of the details, but that occurs commonly under the anti-dumping duty law. However, in this case, we're not asking the Court to reach the merits of Commerce's determination. What we do agree with the petitioners on, however, is that the trial court possess jurisdiction to address step four of the six-step process at page three of our brief. And should the Department of Commerce ultimately be reversed on its determination? Should the Court find that its scope determination was not supported by substantial evidence? Then the process would continue to the ITC. Well, you say the Court. You mean on the remand it would follow? Correct. It's not before us as to whether there was substantial evidence. We believe that there is substantial evidence supporting Commerce's determination. So the plaintiffs have to get past that hurdle before they can ever get an amended scope before the ITC. But that's a determination made by the CIT, not by us. That's absolutely correct. You're arguing that case before us. No, no. Well, I was responding to the Court's question. However, we're not asking for the Court to sustain on the merits here. Okay. And for these reasons, we do not object to a remand to the trial court to address the merits of the Department of Commerce's final determination. Okay. Thank you. Thank you. Let's see if Mr. Carsey agrees with you. Your Honors, I see that the government had a couple minutes remaining. I had six minutes of time. You have six minutes if you wish to use them. Yes. May it please the Court, I'm Michael Carsey of Kelly Dry, Kelly, or Shannon. I'm appearing on behalf of Eastern Fish, an importer of shrimp products. We requested that Dustin Shrimp be excluded from the scope of the dumping investigations below. We participated at the CIT. We're participating here. We are the only party, obviously, speaking up in favor of the CIT's decision. I'm going to take a minute to try to convince you that it's correct and should be upheld. In a dumping investigation, you basically have distinction between determinations made by the agencies, Commerce on dumping, the ITC on injury. They have to make final affirmative determinations. Only if there are two final affirmative determinations will there be an order issued. Here it is clear that the petitioners on appeal to CIT asked the CIT to order Commerce to amend the orders. It's also clear in the government, and we agree, that this is – the CIT was correct in saying this is beyond the scope of the CIT to do. The orders cannot be amended just by Commerce because the ITC has to be brought in. The ITC will have to consider eventually whether, when you throw Dustin Shrimp into the mix, there still is injury. So the decision below basically was two-part. First part, does the court have the authority to exclude this product or to order Commerce to amend the orders? There's agreement that it doesn't have that authority. The next question is, does the CIT have the authority to instruct Commerce to simply amend its determination, its final affirmative determination? Now, the CIT ruled that this was an alternative remedy that came up at oral argument after oral briefing. The court indicated in this decision that it indicated in oral argument that if the petitioners wanted this alternative remedy pursued… … they needed to file a motion to amend their complaints in their principal briefs. As the CIT noted, there was no motion filed. And as the CIT noted, the CIT said the court is not in a position of amending – of seeing to the pleadings of the petitioners here. And it denied the alternative remedy on the basis of that failure. Now, as we point out in our brief, both the appellants here, petitioners, and the government ignore this part of the CIT's ruling. And this is a separate problem altogether for your upholding the CIT. This is within the scope of its decision. The appellants did not appeal this issue. It has been waived. There's no need to reach this issue at this point. The second issue of whether the court had the authority to instruct commerce in this regard. But beyond that, if you do reach the merits, Judge Stanzo of the CIT was still correct. In order – in every case, a petitioner, to get to an order, has to have an affirmative for commerce in the ITC. Commerce is in charge of setting the scope of the investigation and the scope, ultimately, of what the order will be. That's called the class or kind of merchandise. Scope is a short form for it. The International Trade Commission has another obligation. It determines like product. Class or kind of merchandise is what's coming inbound, what is alleged to be dubbed. Like product, what's produced domestically, what's being affected. In order to get a product in an order, petitioners have to get an affirmative decision, have to get that product into the class or kind of merchandise, and have to get the product into the like product. But they were interested in all importations of shrimp. So why should they have the burden of separating out the different kinds? Because the parties have the burden before the agencies to respond to the arguments and to the concerns that the agencies have of policing the area. Now, in this case, once commerce – the issue of whether dust and shrimp was within the class or kind of merchandise was alive from the very beginning of the case. Petitioners were on notice that they needed to defend their position at the ITC as well as the Commerce Department. At the ITC, it meant making sure the ITC recognized that the like product included dust and shrimp. But they must have it if it wasn't separated out? They did not. When commerce ruled in its final determination that dust and shrimp was excluded, the ITC, in like product, waiting for arguments, other parties came in. Some domestic producers came in and said, fresh should be in the like product, fresh shrimp. The petitioners then said, on class or kind of merchandise, fresh is out. The ITC said, yes, fresh is in. The petitioners did not show up at the ITC and say to the ITC, dust and shrimp is within the like product, even though commerce excluded it. They did not preserve their position.  It did not. In its final affirmative injury determination, it excluded dust and shrimp from the relevant like product that it found injury for. Did I misread the briefs? I thought that what you told us or what someone told us was that what they were dealing with were the totals of all. That is what the staff informed the ITC. But as a matter of law, the ITC in plain language said, we – because commerce excluded dust and shrimp and because there was no arguments from any party at that point that dust and shrimp is part of the like product, it's not within the like product. Now, like product trumps class or kind of merchandise when it's narrower. The ITC has to go by commerce to class or kind of merchandise, but if the ITC finds the domestic industry is narrower than the party coming in, the scope of the order can only be as broad as the like product. The point here is this. Petitioners know throughout the investigation they have two goals they have to hit by the end of the case. Their product they want in has to be ruled by commerce to be within the class or kind of merchandise, ruled by the ITC to be within the like product. Here, petitioners abandoned in the final phase of the injury investigation the position that dust and shrimp is within the like product. Had they made that argument, they would have been able to appeal that decision under 1516 AA 2B2. They didn't do it. They only appealed commerce's decision. That omission basically is what Judge Stanso was getting at. Had there been an appeal there of the ITC, had there been a pursuit of this issue of the ITC, both agencies would be before the court. Now, what Judge Stanso was saying is he did not have jurisdiction over the ITC. In essence, the petitioners had waived their right to this remedy, ultimate remedy of getting the orders changed because they failed to keep up and pursue their right to remit with the ITC. Okay. Any questions? Okay. Thank you, Mr. Corsi. Mr. Ward? Again, for the record, Bradford Ward, I would like to make a couple of very brief points. First, this case is fundamentally about jurisdiction, first and foremost. That is the whole point here. We agree, I think all the parties agree, that there is a multi-step process here. That's what the statute requires going back and forth between various agencies and a number of different decisions. All we're saying is that the court here has misinterpreted the statute to require a jurisdictional element that is not in the statute. We are not required in challenging the Commerce Department decision to likewise concurrently challenge the ITC. Now, there's much been made that, well, what about the, haven't you sought to have the orders amended? That is, again, that is the ultimate goal here. If we had not put into play in our case before the CIT the fact that orders are what we ultimately sought, then if we had been successful on the substantive case with Commerce, that would have been the end of it because we had not sought the complete relief, the change of the order. If all we had said is Commerce was wrong, please ask them to fix it, stop, then we would have had no basis to ask for the ultimate relief, which is by statute going back to the ITC, getting them to issue a determination, and then requesting that Commerce issue a new order. So, by definition, we had to keep the issue of an amended order within our case at CIT. It's clear that the issue of an alternative remedy raised at oral argument really is sort of a red herring here. Our brief, I think, makes very clear on pages 7 through 9 that we requested first, in the first instance, a change in the determinations in our complaint, in our Rule 56.2 motion, in our prayer for relief, and in our draft order. It also addressed anti-dumping duty orders and changes, but in the first instance, it sought to make sure that the determinations were there. The ITC could not have provided the relief that we sought after the Commerce Department ruled to exclude dusted shrimp. There was no way for the ITC to make a ruling that would have resulted in dusted shrimp being subject to anti-duties. There was nothing to appeal on the ITC determination. Likewise, we're going back to the point that this is a multi-step process. We're seeking the ruling on jurisdiction of the CIT, and if we are successful, there may be the opportunity to go to the ITC. If we're not successful, that is the end of the story. But we have to start with the initial jurisdictional question, which we believe that the ITC got plainly wrong. Okay. Thank you, Mr. Ward. Mr. Hudson, Mr. Corsi. Case is taken under submission.